# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 13-CV-2994 (JFB)(ARL)

————————————

SANDRA MACER,

Plaintiff,

VERSUS

BERTUCCI'S CORPORATION,

Defendant.

————————————

**MEMORANDUM AND ORDER**
December 3, 2013

————————————

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Sandra Macer ("Macer" or "plaintiff") brings this action against Bertucci's Corporation ("Bertucci's" or "defendant") pursuant to Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, for unlawful discrimination in a place of public accommodation. Plaintiff alleges that the Bertucci's Restaurant in Melville, New York, refused her request for a party reservation because its employees linguistically profiled her as Black. Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). It argues that the instant suit is barred by collateral estoppel and, in the alternative, that plaintiff fails to allege a plausible racial discrimination claim. For the following reasons, the Court agrees and grants the motion in its entirety.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the complaint. The Court assumes these facts to be true for purposes of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party. In addition, the Court takes judicial notice of defendant's log book, which plaintiff attached to the complaint. The Court also takes judicial notice of the filings and records for the proceedings before the New York State Division of Human Rights ("NYDHR"), which defendant attached to its moving papers.[1]

---

[1] As discussed *infra*, it is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint, as well as documents filed in other courts and other public records. *See, e.g.*, *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *Subaru*

### 1. Plaintiff's Allegations

On April 8, 2011, Macer called Bertucci's Restaurant in Melville, New York ("the restaurant"), to book a party for Friday, April 22, 2011. (Compl. ¶ A). Dan D'Agostino and Tina Tarsia, two managers, denied the request. (*Id.*) They allegedly told plaintiff that the restaurant does not schedule parties on weekends or holidays. (*Id.*) On April 24, 2011 (Easter Sunday), however, plaintiff witnessed a party at the restaurant. (*Id.*) When plaintiff confronted defendant's employees, they said that the restaurant did not host parties on Good Friday. (*Id.*) Plaintiff alleges that defendant's employees denied the reservation because of her race. (*Id.*) Specifically, she claims the employees refused her request once they discerned that she was Black based on her voice over the telephone. (*Id.*) Further, plaintiff asserts that the employees lied when they said the restaurant does not have parties on weekends. (*Id.*) For instance, the restaurant's log book shows that parties occurred on weekends and that those parties were booked via telephone.[2] (*Id.*)

### 2. Defendant's Log Book

For Friday, April 22, 2011, the log book reads: "NO PARTIES!! Good Friday." (Log Book, Compl. Ex. A, at 46.) No reservations are listed. No reservations are listed for the rest of the weekend, either. (*Id.* at 45.) The log book also states "no parties" for Sunday, May 8, 2011—Mother's Day (*id.* at 41), and Monday, February 14, 2011—Valentine's Day (*id.* at 60).

### 3. NYDHR Administrative Proceedings

In October 2011, Macer filed a verified complaint with NYDHR pursuant to N.Y. Executive Law § 296, alleging that Bertucci's discriminated against her for being Black when it refused to accept her telephone reservation requests. (Verified Complaint, Motion Ex. A; Amended Complaint, Motion Ex. B.) Defendant countered that it did not accept reservations on weekend evenings and holidays like Good Friday, and that no one at the restaurant knew Macer's race when her request was refused. (Position Statement, Motion Ex. C, at 1–2; Verified Answer, Motion Ex. D.) NYDHR recommended a public hearing after an investigator found "good cause" to proceed because the restaurant had booked parties on weekend evenings and on the Friday prior to the night in question. (*See* Final Investigative Report and Basis for Determination, Motion Exs. E, F.) NYDHR held a public hearing before an administrative law judge ("ALJ") on August 22, 2012. (Transcript, Motion Ex. G.)

---

*Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). Thus, in deciding motions to dismiss in discrimination actions, courts regularly take notice of NYDHR filings and determinations relating to a plaintiff's claims. *See, e.g.*, *Lindner v. Int'l Bus. Machs. Corp.*, No. 06 Civ. 4751(RJS), 2008 WL 2461934, at *1 n.1 (S.D.N.Y. June 18, 2008) (taking judicial notice of NYDHR filings); *Evans v. N.Y. Botanical Garden*, No. 02–CV–3591 (RWS), 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (same). In addition, courts may take judicial notice of documents filed in related litigation by a plaintiff. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *see also Nealy v. Berger*, No. 08 Civ. 1322(JFB), 2009 WL 704804, at *1 (E.D.N.Y. Mar. 16, 2009) (taking judicial notice of court filings).

---

[2] The complaint details several parties with reservations on weekends throughout 2011. (*See* Compl. ¶ A.) The complaint does not allege, however, that other individuals successfully booked tables for April 22, 2011.

Counsel for NYDHR examined witnesses at the hearing, including Macer, Macer's husband, and Tarsia. (*See generally id.*) Cross-examination was permitted. (*See generally id.*) Defendant also was represented by counsel and questioned witnesses. (*See generally id.*)

On January 18, 2013, the ALJ provided the parties with his Recommended Findings of Fact, Opinion and Decision, and Order. (Recommended Order, Motion Ex. I.) The ALJ found that the record did not support the allegations and made the following findings:

(1)     Plaintiff "did not demonstrate a discernible accent during her testimony at the public hearing." (*Id.* ¶ 3.)

(2)     Tarsia followed an established, unwritten general policy that the restaurant would not book reservations on weekend evenings or holidays. (*Id.* ¶ 4.)

(3)     The restaurant sometimes would make exceptions if the evening or holiday was less busy and staff was available, but it never made exceptions on high-volume holidays like New Year's Day, Good Friday, Mother's Day, and Father's Day. (*Id.* ¶¶ 6–7.)

(4)     Neither Tarsia nor D'Agostino could discern plaintiff's race, color, or national origin from the telephone when they denied her requests. (*Id.* ¶¶ 8, 11, 13, 14.)

(5)     While Macer claimed to observe large parties at the restaurant on Easter Sunday in which all attendees were White, her husband testified that he witnessed "some minority"

guests and at least one Black guest. (*Id.* ¶¶ 18–20.) There was no evidence that the parties were booked in advance by reservations. (*Id.* ¶ 21.)

The ALJ concluded that Macer failed to show that Bertucci's harbored discriminatory animus toward Macer, or that it treated other similarly situated individuals more favorably. (*Id.* at 6.) According to the ALJ, the restaurant had followed its established, unwritten policy for reservations on Good Friday, and the presence of a party on Easter Sunday did not support the allegation of unlawful discrimination against minorities. (*Id.*) The ALJ recommended dismissal of the claim. (*Id.*) On March 7, 2013, after considering Macer's objections and Bertucci's responses thereto (*see* Motion Exs. J, K, L), NYDHR issued its Notice and Final Order, which adopted the ALJ's Recommended Order in full (Final Order, Motion Ex. M).

## B.     Procedural Background

Plaintiff filed the complaint on May 21, 2013. Defendant moved to dismiss on June 19, 2013. Plaintiff opposed on June 26, 2013. Defendant replied on August 7, 2013.

## II.     STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'"

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556–57 (internal citation omitted)).

The Court notes that in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003).

### III.    DISCUSSION

Defendant moves to dismiss plaintiff's complaint, arguing that (1) NYDHR's finding that defendant did not discriminate against plaintiff collaterally estops plaintiff's federal claim, and (2) plaintiff otherwise fails to state a claim because she does not allege facts supporting an injunction or discriminatory intent. Plaintiff counters that the ALJ was biased against her, an NYDHR investigator found Bertucci's guilty of discrimination, and the evidence shows the restaurant discriminated against her. As set forth below, the Court finds that the NYDHR determination precludes plaintiff's federal claim, and plaintiff otherwise fails to state a plausible cause of action under Title II. Accordingly, the Court grants the motion to dismiss.

### A.    Claim Preclusion

According to defendant, NYDHR's determination that Bertucci's did not discriminate against Macer should preclude the present action because, although plaintiff now brings a Title II and not New York Human Rights Law ("NYHRL") claim, NYDHR decided the same underlying issue following a full and fair adversarial proceeding. Plaintiff counters that the ALJ was biased against her because she left him a message via telephone, and she was *pro se* and lacked counsel to advise her otherwise.

As a threshold matter, this Court must consider whether, in enacting Title II, "Congress expressly or implicitly limited the preclusive effect to be given to the determinations of state administrative agencies, as it did under Title VII." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 728 (2d Cir. 2001) (citing *Univ. of Tenn. v. Elliot*, 478 U.S. 788 (1986) (holding that Congress intended to give preclusive effect to state agency findings in suits under 42 U.S.C. § 1983, but not in suits under Title VII)). In *Kosakow*, the Second Circuit concluded that, with respect to the Family Medical Leave Act ("FMLA"), Congress did not intend to limit the preclusive effect to be given to determinations by state administrative agencies. 274 F.3d at 728–29. This Court similarly holds, with respect to Title II, that Congress did not intend under that statute to limit the preclusive effect to be given determinations made by state administrative agencies. Although neither the Supreme Court nor Second Circuit has ever specifically addressed this question under Title II, their jurisprudence in examining this issue with respect to other federal statutes is instructive. In particular, as defendant notes, Title II lacks the statutory characteristics that federal courts have found prevent the preclusive effect of a state administrative agency's decision. For instance, unlike in Title VII or the Age Discrimination in Employment Act ("ADEA"), Title II—like the FMLA— "contains no express provision governing the weight to be given a state agency's factual determinations." *Kosakow*, 274 F.3d at 728. In addition, there also is no implicit deprivation of preclusive effect, because Title II does not require a plaintiff to first exhaust her administrative remedies before filing in federal court. *See id.* at 729 (noting that Supreme Court recognized that ADEA mandates complainant to pursue federal

complaint only after completing proceedings under state law (citing *Astoria Fed. Sav. & Loan Co. v. Solimino*, 501 U.S. 104, 110–11 (1991)); 42 U.S.C. § 2000a-6 (providing that federal courts have jurisdiction under Title II "without regard to whether the aggrieved party shall have exhausted any administrative or other remedies that may be provided by law"). Thus, because there is "no indication of a Congressional intent anywhere in [Title II] to limit the preclusive effect of state administrative agency factual determinations," the Court must determine whether, under New York law, NYDHR's finding is entitled to preclusive effect although it was not reviewed by a state court. *Kosakow*, 274 F.3d at 729.

With respect to Macer's § 2000a claim, the unreviewed disposition of the NYDHR is "entitled to the same issue and claim preclusive effect in federal court that the agency's determinations would receive in [New York State] courts."[3] *Kosakow*, 274 F.3d at 728 (citing *Elliot*, 478 U.S. at 798–99); *Jeter v. N.Y.C. Dep't of Educ.*, 549 F. Supp. 2d 295, 304 (E.D.N.Y. 2008) ("New York law controls whether Jeter's prior NYDHR proceedings preclude his non-Title

---

[3] Under NYHRL, two remedies are available to a plaintiff asserting causes of action founded upon discrimination: (1) a remedy through judicial review or (2) a remedy through an administrative action. *Napoletano v. Damianos Realty Grp.*, No. CV-06-3806 (JFB)(WDW), 2007 WL 1160411, at *6 (E.D.N.Y. Apr. 18, 2007) (citing *Moodie v. Fed. Reserve Bank of N.Y.*, 58 F.3d 879, 882–83 (2d Cir. 1995)). "Under N.Y. Exec. Law § 297(9), these remedies are mutually exclusive; that is, one who files a complaint with the Division of Human Rights cannot then seek a remedy through the judicial process." *Id.* (citing *Moodie*, 58 F.3d at 882). Thus, a subsequent judicial action on the same complaint generally is barred once the complainant elects an administrative forum by filing a complaint with NYDHR, unless the agency dismisses the complaint for "administrative convenience" under N.Y. Exec. Law § 297(9). *Id.* (citing *Moodie*, 58 F.3d at 883).

VII claims." (citing *Kosakow*, 274 F.3d at 730 n.7)).

Under New York law, a prior claim will preclude a subsequent claim where the issues are the same and the party to be estopped had a "full and fair opportunity to contest the decision now said to be controlling." *Kosakow*, 274 F.3d at 730 (citing *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 71 (1969)). New York's transactional analysis of *res judicata* also "bar[s] a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burka v. N.Y.C. Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994) (citation omitted). "The burden of proving identity of the issue rests on the proponent of collateral estoppel, while the opponent bears the burden of proving that [she] . . . did not have a full and fair opportunity to litigate the issue." *Kosakow*, 274 F.3d at 730 (citing *Schwartz*, 24 N.Y.2d at 73). In evaluating whether an unreviewed NYDHR proceeding afforded the plaintiff a full and fair opportunity to litigate her claims, the court should consider "'the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromised verdict, differences in the applicable law and foreseeability of future litigation.'" *Id.* at 734 (quoting *Schwartz*, 24 N.Y.2d at 72).

An analysis of the *Kosakow* factors overwhelmingly supports the application of the doctrine of collateral estoppel to plaintiff's Title II claim. First, there is an identity of issues. Although Macer's present claim is under federal rather than state law, the crux of her complaint—that defendant refused her reservation on account of her race—involves the identical facts and issues

presented to NYDHR, and the legal standards governing Title II and NYHRL claims are similar. *See Kennedy v. Gen. Motors Corp.*, 664 F. Supp. 122, 126–27 (S.D.N.Y. 1987) (stating that NYHRL "provides protection against discrimination at least as broad as that afforded by the federal constitution and civil rights statutes," and finding that 42 U.S.C. § 1981 claim was barred because agency's dismissal of complaint also would bar state action based upon same allegations (internal quotation marks and citation omitted)). Second, it is beyond dispute that NYDHR has the authority to adjudicate disputes about discrimination in public accommodations and issue binding determinations with respect to those disputes. *Kosakow*, 274 F.3d at 734. Third, the record shows that plaintiff conducted discovery, such as procuring defendant's log book, to support her claim and attempt to refute the restaurant's position. Fourth, and arguably most importantly, NYDHR found probable cause for a public hearing, and counsel for NYDHR presented Macer's case to the ALJ during an adversarial proceeding. There is no indication that counsel for NYDHR did not competently and effectively present the evidence, examine Macer and other witnesses, and present Macer's case to the ALJ. The hearing's adversarial nature militates against a concern that plaintiff's *pro se* status affected the fairness of the proceeding because she could not understand the implications of decisions by counsel and the ALJ. These events also demonstrate that plaintiff had the "initiative to litigate," which favors preclusion. *Johnson v. Cnty. of Nassau*, 411 F. Supp. 2d 171, 181 (E.D.N.Y. 2006) (quoting *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494 (1984)). Plaintiff also points to no statements indicating that the ALJ was biased against plaintiff because of any *ex parte* telephone calls. Nor does plaintiff claim that the ALJ

issued a compromise verdict or that new evidence became available to plaintiff after NYDHR dismissed the complaint.

The Court's holding is consistent with that of the Second Circuit, as well as district courts in the Second Circuit, that have found, under analogous federal statutes, that NYDHR administrative determinations precluded subsequent federal actions. *Compare DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 116–18 (2d Cir. 1987) (precluding claims where plaintiff received two formal hearings and admitted he had "fleshed out" relevant issues), *Johnson*, 411 F. Supp. 2d at 183 (holding that plaintiff failed to show he lacked full and fair opportunity to litigate claim of discrimination and retaliation despite the lack of a hearing, because plaintiff had not explained how hearing would have altered outcome or what other facts could have been brought out, plaintiff was represented by counsel, and there was no compromise verdict), *and Evans*, 2002 WL 31002814, at *5–6 (dismissing claim as precluded where NYDHR interviewed various witnesses and conducted conference with parties and witnesses present), *with Kosakow*, 274 F.3d at 734–36 (finding that NYDHR proceeding did not present plaintiff full and fair opportunity to litigate and could not preclude subsequent federal action advancing same claims where the NYDHR's finding of no probable cause primarily was based upon a review of the complaint and answer, and there was no record of any discovery being conducted, witness interviews, or any hearing or conference between the parties), *and Lloyd v. N.Y. Botanical Garden*, No. 03 Civ. 7557, 2004 WL 2093468, at *3–4 (S.D.N.Y. Sept. 17, 2004) (finding no estoppel because plaintiff did not receive hearing, could not confront witnesses, was not entitled to discovery, was proceeding pro se, and was unaware of evidence relied upon by agency).

Therefore, the Court finds that "the procedures used in the administrative proceeding assured that the information presented to the agency [was] sufficient both quantitatively and qualitatively, so as to permit confidence that the facts asserted were adequately tested, and that the issue was fully aired." *Kosakow*, 274 F.3d at 734 (quoting *Allied Chem. v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 276–77 (1988)). Accordingly, NYDHR's determination that defendant did not discriminate against plaintiff on account of her race precludes plaintiff's Title II cause of action, and the claim must be dismissed on that basis.[4]

## B.    Failure to State a Claim

The Court also holds, in the alternative, that plaintiff fails to adequately state a claim under Title II. Title II prohibits discrimination in the provision of "goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation," such as a hotel, restaurant, or theater. 42 U.S.C. § 2000a(a)–(b). Its "overriding purpose . . . is to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public." *Gilmore v. Amityville Union Free Sch. Dist.*, 305 F. Supp. 2d 271, 278 (E.D.N.Y. 2004) (quoting *Daniel v. Paul*, 395 U.S. 298, 307–08 (1969)) (internal quotation marks and bracketing omitted).

### 1.    Injunctive Relief

Title II of the Civil Rights Act provides, in relevant part:

---

[4] To the extent plaintiff also attempts to bring her claim under 42 U.S.C. §§ 1981 or 1983, the above-referenced analysis also would preclude those claims based upon the NYDHR's determination. *See Elliott*, 478 U.S. at 797–99.

Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-2 of this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved and, upon timely application, the court may, in its discretion, permit the Attorney General to intervene in such civil action if he certifies that the case is of general public importance. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the civil action without the payment of fees, costs, or security.

42 U.S.C. § 2000a-3(a). Thus, even if a person allegedly excluded from a restaurant because of race proves a violation of Title II, she would not be entitled to damages and could only obtain injunctive relief and reasonable attorneys' fees. *See Newman v. Piggie Park Enters.*, 390 U.S. 400, 401–02 (1968) (per curiam) ("A Title II suit is thus private in form only. When a plaintiff brings an action under that Title, he cannot recover damages.").

Macer only seeks damages. (*See* Compl. at "Relief" ("I am seeking 1 million dollars in damages.").) She does not request an injunction. Thus, the claim must be dismissed. *See, e.g.*, *Henry v. Lucky Strike Entertainment, LLC*, No. 10-CV-03682 (RRM)(MDG), 2013 WL 4710488, at *13 (E.D.N.Y. Sept. 1, 2013) (granting summary judgment on claims under Section 2000a for monetary relief, because statute's only remedy is injunctive relief); *accord Ajuluchuku v. Bank of Am. Corp.*, Nos. 3:06-cv-60, 3:06-cv-122, 3:06-cv-228, 3:06-cv-229, 3:06-cv-230, 2007 WL 952015, at *2 (W.D.N.C. March 27, 2007) (same).

Even if plaintiff sought injunctive relief, the Court would dismiss the claim. To demonstrate that she has standing to pursue a claim for injunctive relief, a plaintiff must "show a 'real and immediate threat of repeated injury.'" *Henry*, 2013 WL 4710488, at *12 (quoting *Joseph v. N.Y. Yankees P'ship*, No. 00 Civ. 2275(SHS), 2000 WL 1559019, at *5 (S.D.N.Y. Oct. 19, 2000)). The plaintiff "must set forth the likelihood of a future encounter with the defendant which is likely to lead to a similar violation of some protected right." *Joseph*, 2000 WL 1559019, at *5.

Here, plaintiff's claim is based on an incident in 2011. The complaint includes no allegations that defendant discriminated against plaintiff since the events in question, much less allegations that such discrimination likely will occur in the future. Indeed, plaintiff alleges that she went to the Bertucci's in question after her reservation was denied, but she does not claim that she suffered discrimination on Easter Sunday 2011, or any other date after the alleged incident. (*See* Compl. ¶ A.) Nothing in plaintiff's opposition indicates that discrimination likely will occur in the future, either. Therefore, even if she sought injunctive relief, the Court finds that plaintiff lacks standing to assert a claim for injunctive relief pursuant to 42 U.S.C. § 2000a-3(a).

### 2. Discriminatory Intent

In addition, in the alternative, the Court concludes that plaintiff has not articulated a plausible claim of discriminatory intent under Section 2000a.

It is well-settled that "'a plaintiff alleging a violation of Section 2000a must allege facts which show [she] was deprived of equal use and enjoyment of a covered facility's services and facts which demonstrate discriminatory intent.'" *Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 307 (S.D.N.Y. 2009) (quoting *Thomas v. Tops Friendly Markets, Inc.*, No. CIVA96CV1579(RSP/GJD), 1997 WL 627553, at *5 (N.D.N.Y. Oct. 8, 1997)); *see also Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) ("In order to survive a motion to dismiss under any of the civil rights statutes invoked, 'the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.'" (quoting *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994))). Discriminatory intent may be shown by direct or circumstantial evidence, including evidence of a difference in treatment. *Coward*, 665 F. Supp. 2d at 307. Generally, in order to support an inference of discrimination, knowledge of a plaintiff's race must exist in tandem with other circumstances. *Weiss v. La Suisse*, 260 F. Supp. 2d 644, 657 (S.D.N.Y. 2003).

Plaintiff alleges that the employees "could discern my voice that I was black." (Compl. ¶ A.) Even assuming this is true and reading the *pro se* complaint liberally, plaintiff's claim must fail because, other than that conclusory allegation, she does not allege any other facts that plausibly support an inference that defendant's employees discriminated against plaintiff on account of her race. Plaintiff does not allege that the employees made any derogatory statements, that they accepted other reservations on Good Friday, or that they denied minorities' requests for reservations at other times. In fact, contrary to plaintiff's conclusory allegation, the portion of the log book attached to plaintiff's complaint shows that the restaurant took no reservations for the Good Friday or Easter Sunday in question.[5] (*See* Log Book, at 41, 45, 46, 60 (listing no parties for the weekend of April 22, 2011).) Therefore, the Court concludes, in the alternative, that the allegation of discriminatory intent is conclusory and fails to state a plausible claim under Title II.

Accordingly, even if preclusive effect is not given to the Title II claim because of the NYDHR administrative proceedings, the Court, in the alternative, grants defendant's motion to dismiss for failure to state a claim because plaintiff cannot seek monetary damages under Section 2000a, fails to demonstrate that she has standing to seek injunctive relief, and does not adequately allege discriminatory intent.[6]

---

[5] In analyzing the sufficiency of a complaint, a court need not accept as true pleadings "that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 504–06 (S.D.N.Y. 2001) (citing *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971)).

[6] To the extent plaintiff also attempts to assert claims under 42 U.S.C. §§ 1981 or 1983, the Court concludes, in the alternative, that she fails to state a claim under those statutes. First, the Court concludes that plaintiff cannot state a claim under § 1983 because she does not allege that defendant acted under color of state law. *See Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). The Court also finds that plaintiff fails to state a claim under § 1981 because,

## IV.    CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to dismiss. The Court finds that amendment would be futile because plaintiff's claim is precluded, she otherwise lacks standing to seek injunctive relief, and she has not proffered any facts which could provide a basis for a plausible discrimination claim under Title II. *See* Fed. R. Civ. P. 15(a); *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2003) (noting that it is appropriate to deny leave to amend when proposed amendment would be futile). Accordingly, the complaint is dismissed, with prejudice. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. The Clerk of the Court shall close this case and enter judgment accordingly.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 3, 2013
        Central Islip, NY

\*\*\*

Plaintiff is not represented by counsel and proceeds *pro se*. Defendant is represented by James M. Carman, Carman, Callahan & Ingham, LLP, 111 West 57th St., Suite 1409, New York, NY 10019.

---

as noted above, she fails to "specifically allege . . . circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf*, 35 F.3d at 713 (citations omitted).

10